**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| FLYGRIP, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 6:21-cv-01082-ADA |
| WALMART INC., | |
| Defendant | |

## ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)

Before the Court is Defendant Walmart Inc.'s ("Walmart") Motion to Stay, or in the Alternative, to Transfer Venue under 28 U.S.C. § 1404(a) to the District of Colorado. ECF No. 20. Plaintiff Flygrip, Inc. ("Flygrip") filed its Response on May 4, 2022. ECF No. 21. Walmart filed its Reply on May 11, 2022. ECF No. 24. After careful consideration of the parties' briefs and the applicable law, the Court **GRANTS-IN-PART AND DENIES-IN-PART** Walmart's Motion to Stay or in the Alternative, to Transfer to the District of Colorado.

## I. INTRODUCTION

Walmart's Motion asks the Court to stay this case pending resolution of two Declaratory Judgments Actions ("DJ Actions") filed in the District of Colorado by Otter Products LLC ("Otter") and Popsockets LLC ("Popsockets"), two manufacturers of the accused products in this suit. The DJ Actions seek judgments of noninfringement on the same patents and accused products at issue here. ECF No. 20 at 1. Walmart posits that this case falls under the "customer-suit exception" to the first-filed rule, dictating that this case should be stayed to avoid wasting party and judicial resources. *Id.* at 7. In the alternative, Walmart asks this Court to transfer this case to the District of Colorado. *Id.* at 9.

1

## II. FACTUAL BACKGROUND

Plaintiff Flygrip filed this lawsuit accusing Defendant Walmart of infringing on U.S. Patent Nos. 10,800,024 ("'024 patent") and 8,844,098 ("'098 patent") (collectively, "Asserted Patents"). ECF No. 1. Flygrip alleges that Walmart makes, sells, offers for sale, and/or imports products that practice the technology of the Asserted Patents. *Id.* at 2. The accused functionalities are the Otter Otter+PopSocket line of handheld devices cases (the "Otterbox Products"), the Popsockets line of PopGrip products (the "Popsockets Products"), the Quest USA Corp. ("Quest") line of SpinPop products (the "Quest Products"), and the Merkury Innovations LLC ("Merkury") line of Grip'z handheld device grips (the "Merkury Products") ECF No. 1 at 4–8. The DJ Actions were later filed in the District of Colorado. ECF No. 20 at 1.

Walmart is a Delaware corporation with its principal place of business in Bentonville, Arkansas. ECF No. 1 ¶ 2. It is also registered to do business in Texas. *Id.* at ¶ 3.

Flygrip is a corporation organized under the laws of Texas with its principal place of business in New York. *Id. ¶ 1.*

## III. LEGAL STANDARD

### A. Stay

A trial court has broad discretion to stay an action against a party to promote judicial economy. *Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254–5, 57 S. Ct. 163, 81 L. Ed. 153 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). Where suit is brought against a manufacturer and its customers, the action against the customers

should be stayed pending resolution of the case against the manufacturer to promote judicial economy. *See In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365–66 (Fed. Cir. 2014).

Specifically, the "customer-suit exception" to the first-filed rule provides that "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990). This exception "exists to avoid, if possible, imposing the burdens of trial on the customer, for it is the manufacturer who is generally the 'true defendant' in the dispute." *Nintendo*, 756 F.3d at 1365 (citation omitted). "[C]ours apply the customer suit exception to stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011).

To warrant a stay of the customer suit, the case involving the manufacturer "need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue." *Spread Spectrum*, 657 F.3d at 1358 (citing *Katz*, 909 F.2d at 1464). Courts are instructed to use a "flexible approach" to avoid wasteful expenditure of resources, and therefore "stay [] proceedings if the other suit is so closely related that substantial savings of litigation resources can be expected." *In re Google Inc.*, 588 F. App'x 988, 991 (Fed. Cir. 2014); *see also Nintendo*, 756 F.3d at 1365–66 (the customer-suit exception is "designed to facilitate just, convenient, efficient, and less expensive determination" (citations omitted)).

In determining whether the customer suit exception applies, the court analyzes three factors: "(1) whether the customer-defendant in the earlier-filed case is merely a reseller; (2) whether the customer-defendant agrees to be bound by any decision in the later-filed case that is in favor of the patent owner; and (3) whether the manufacturer is the only source of the infringing

product." *CyWee Grp. Ltd. V. Huawei Device Co.*, No. 2:17-cv-495-WCB, 2018 U.S. Dist. LEXIS 142173, at *14 (E.D. Tex. Aug. 22, 2018) (quoting *Vantage Point Tech., Inc. v. Amazon.com Inc.*, No. 2:13-cv-909, 2015 U.S. Dist. LEXIS 675, 2015 WL 123593, at *2 (E.D. Tex. Jan. 6, 2015)). The "guiding principles in the customer-suit exception cases are efficiency and judicial economy." *Spread Spectrum*, 657 F.3d at 1357 (citation omitted).

The factors courts typically consider when determining whether to grant a general stay include: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the uses and trial of the case; (3) whether discovery is completed; and (4) whether a trial date has been set." *GreatGigz Sols., LLC v. Costco Wholesale Corp.*, No. 6:21-CV-807, 2022 U.S. Dist. LEXIS 63778, at *5 (W.D. Tex. Apr. 6, 2022).

### B. Transfer

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *Id.* "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

"The preliminary question under Section 1404(a) is whether a civil action 'might have been brought' in the transfer destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (hereinafter "*Volkswagen II*"). If the destination venue would have been a proper venue,

then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious[,] and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *Volkswagen II*, 545 F.3d at 315. The burden that a movant must carry is not that the alternative venue is more convenient, but that it is clearly more convenient. *Id.* at 315. Although the plaintiff's choice of forum is not a separate factor entitled to special weight, respect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to "clearly demonstrate" that the proposed transferee forum is "clearly more convenient" than the forum in which the case was filed. *Id.* at 314–15. While "clearly more convenient" is not necessarily equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

## IV. ANALYSIS

Walmart moves to stay this action pending resolution of the pending litigation between Flygrip and manufacturers PopSockets and Otter Products in the DCO. In the alternative, it moves to transfer this case to the DCO. The Court will first address the motion to stay, then proceed to analyze the transfer motion.

### A.   Customer-Suit Exception

Walmart asks the Court to stay the case under the customer-suit exception. For the reasons explained below, the Court holds that the customer suit partially applies because: (1) Walmart has provided evidence that it is merely a reseller of the accused products; (2) Walmart has agreed to be bound by the outcomes of the DJ Actions; and (3) Otter and Popsockets were the only sources of some of the accused products.

#### 1.   Whether Walmart is Merely a Reseller

Walmart argues that is a mere reseller of the accused products. ECF No. 20 at 7. It "has not designed, developed, or manufactured any of the accused products." ECF No. 20-2 ¶ 3. Flygrip does not rebut this. The Court finds that Walmart is a mere reseller of the Accused Products.

#### 2.   Whether Walmart Agrees to Be Bound By Any Decision in the Later-filed Cases

Walmart has agreed to be bound by the outcomes of the DJ Actions. *Id.* at ¶ 8. Flygrip argues that because the issue of invalidity is not a part of the DJ Actions, resolution of the infringement issues would still leave this Court with the task of adjudicating the invalidity issue. ECF No. 21 at 7. In its Reply, Walmart argues that if Flygrip counterclaims for infringement in the DJ Actions, as is typical of patent holders, Popsockets and Otter will be able to assert affirmative defenses of invalidity. ECF No. 24 at 4. The Court agrees. Furthermore, Walmart notes that Popsockets filed two petitions for *inter partes* review already challenging the validity of the

6

'024 Patent. ECF No. 24-2–3. Given the high probability that the invalidity issue will be raised during litigation of the DJ Actions and Walmart's agreement to be bound by the decisions in the DJ Actions, the Court finds that this factor favors a stay under the customer-suit exception.[1]

### 3.  Whether the Manufacturer Is the Only Source of the Infringing Products

Flygrip argues that while two products in this case are manufactured by the Colorado DJ Actions plaintiffs, the remaining two products at issue are manufactured in New York, by Quest and Merkury. ECF No. 21 at 7. The Colorado manufacturers are thus not the only sources of the infringing products. Flygrip posits that infringement of the Quest and Merkury products will be adjudicated by this Court in the pending case against Five Below.[2] In order to avoid potential inconsistent judgments, judicial economy would favor this Court's proceeding with the claims involving Quest and Merkury products. This factor therefore favors a stay.

Having considered the customer-suit exception factors, the Court's conclusion for each factor is summarized in the following table:

| Factor | The Court's Finding |
| --- | --- |
| Whether Walmart is merely a reseller | Yes |
| Whether Walmart agrees to be bound by any decision in the later-filed cases | Yes |
| Whether the manufacturer is the only source of the infringing products | After severance, yes |

---

[1] The Court's reasoning in this factor is distinguishable from *Flygrip, Inc. v. Amazon.com, Inc.* because there, another defendant was in the case. No. 6:21-cv-01081-ADA (W. D. Tex. 2022). In that case, there was no indication that the co-defendant agreed to be bound by the outcome of the declaratory judgment actions. Here, the only defendant, Walmart, has agreed to be bound.
[2] *Flygrip, Inc. v. Five Below, Inc.*, No. 6:21-cv-01080-ADA (W. D. Tex. 2022)

The above factors appear to favor a stay, but the existence of two manufacturers who have not filed DJ Actions would frustrate the purposes under the customer-suit exception of efficiency and judicial economy. Walmart acknowledges this issue in its Motion and proposes that the Court may sever and stay the claims involving Popsockets and Otter only. ECF No. 20 at 8 n.3. Federal Rule of Civil Procedure 21 provides that, "the court may at any time, on just terms, add or drop a party. The court may also sever a claim against a party." *Sonrai Memory Ltd. V. LG Elects. Inc.*, No. 6:21-cv-00168-ADA, 2022 U.S. Dist. LEXIS 31423 (W.D. Tex. Feb. 23, 2022). The Court agrees. The Court therefore exercises its discretion to sever the claims involving the Popsockets and Otterbox Products from the claims involving the Quest and Merkury Products.

### B.  Traditional Stay Factors

Holding that this suit should be severed and partially stayed under the customer-suit exception, the Court does not reach the question of whether the traditional stay factors are met.

—

### C.  Motion to Transfer

Having resolved Walmart's request to stay, the Court now turns to its Motion to Transfer to the DCO. The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in the destination venue—the District of Colorado ("DCO"). In response to claims of infringement "throughout the United States," (ECF No. 1, ¶ 23) Walmart asserts that this case could have originally been brought in the DCO because of its physical presence in Colorado. ECF No. 20 at 10; ECF No. 20-2 ¶ 2. Flygrip does not contest this assertion. Accordingly, the Court finds that venue would have been proper in the DCO had Flygrip originally filed this case there. Thus, the Court proceeds with its analysis of the private and public interest

factors to determine if the DCO is a clearly more convenient venue than the Western District of Texas ("WDTX").

### a. Private Interest Factors

#### i. The Relative Ease of Access to Sources of Proof

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 13, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech*, 566 F.3d 1388, 1340 (Fed. Cir. 2009)).

Walmart is a reseller of the accused products, not a manufacturer or developer. ECF No. 1 at 4–9. Walmart argues that "the documents regarding development, manufacturing, and marketing of the '[A]ccused [P]roducts will come from the four manufacturers—two in Colorado and two in New York.'" ECF No. 20 at 10. Because this Court is severing and staying the claims relating to the Colorado manufacturers, the documents from those companies are irrelevant in this analysis. Only the New York manufacturers will be considered in the transfer analysis. Thus, the documents relevant to development, manufacturing, and design of the Accused Products are in New York. Walmart also adds that there may be relevant documents possessed by Flygrip in New York. Flygrip similarly alleges that the sales records of the accused products are in Arkansas, which is much closer to the WDTX than the DCO. ECF No. 21 at 12. The Court agrees.

Neither party has established that relevant documents exist in either the WDTX or the DCO. Because this Court is severing the claims against the Colorado manufacturers, the only relevant documents on design, development, and manufacture in this case are in New York. Relevant sales information will come from Walmart's principal place of business in Arkansas. Walmart argues that the documents in New York and Arkansas are irrelevant in the transfer analysis because they are outside of the transferor and transferee forums. ECF No. 20 at 10–11 (citing *In re Toyota Motor Corp*. 747 F.3d 1338, 1340 (Fed. Cir. 2014) ("The comparison between the transferor and transferee forums is not altered by the presence of other witnesses and documents in places outside both forums."). But *Toyota* does not support Walmart's assertion here, as the Court did not formulate a *per se* rule that courts should disregard documents and witnesses outside of the transferee and transferor forums. Such a rule would be nonsensical when, for example, documents in Dallas, a mere 90 miles from Waco, would be wholly disregarded because they are stored outside of this District. Such a rule is also contrary to Fifth Circuit law, and more recent Federal Circuit jurisprudence. *See Radmax*, 720 F.3d at 288 (stating that the focus "is *relative* ease of access, not *absolute* ease of access"); *see also Genentech, Inc.*, 566 F.3d at 1342 (considering documents from Europe and Washington D.C. when weighing transfer from Texas to California). Accordingly, this Court will consider the relevance of documents in New York and Arkansas. The cost and inconvenience of shipping or accessing documents in New York is likely similar in either the DCO or the WDTX. Waco to Bentonville, however, is nearly half the distance compared to Bentonville to Denver (or other divisions in Colorado). It is likely easier and cheaper to access the documents from the WDTX than the DCO.

For those reasons, the Court finds this factor slightly disfavors transfer.

ii. *The availability of Compulsory Process to Secure the Attendance of Witnesses*

Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order." *Fintiv Inc.*, No. 6:18-cv-00372, 2019 WL 4743678 at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014). Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person" or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015).

Walmart cites to 13 Colorado-based witnesses associated with the Colorado manufacturers as key third-party witnesses, and one based out of Bogotá, Colombia. ECF No. 24 at 6; *Flygrip v. Amazon*, Case No. 6:21-cv-01081, Doc. Nos. 14-5 & 14-4. However, since the claims involving products manufactured by Otter and Popsockets are being severed, all 13 of those witnesses are irrelevant. The same is true of Flygrip's identification of Francie Frank, who is an Otter employee. ECF No. 21 at 13. Additionally, Walmart names two prior artists Dr. David Barnett and Dr. Lawrence Carlson, noting that they are based in Boulder, Colorado. ECF No. 24 at 6. The evidence Walmart relies on for the prior artists' location are Walmart's invalidity contentions. *See* ECF 24-4. But nowhere in those invalidity contentions are those witnesses identified as living in Colorado. *Id.* There is no evidence in the record showing where they live. Walmart cannot expect to rely on attorney argument without support to presume the prior artists to be subject to compulsory process in the DCO. Flygrip does not identify any other third-party witnesses.

11

The only identified third party witnesses are either no longer relevant because the Court is staying the claims against Otter and Popsockets, or there is no proof that they reside in Colorado. There has been no credible showing that any third-party witnesses would have relevant, material knowledge and reside in either venue. Therefore, the Court finds this factor neutral.

### iii. *The Cost of Attendance and Convenience for Willing Witnesses*

The most important factor in the transfer analysis is the convenience of the witnesses. *In re Genentech, Inc.*, 566 F.3d at 1342. When analyzing this factor, the Court should consider all potential material and relevant witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 U.S. Dist. LEXIS 152438, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017). "When the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *Volkswagen II*, 545 F.3d at 317 (quoting *Volkswagen I*, 371 F.3d at 203). "[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, slip op. at 9 (Fed. Cir. Sept. 27, 2021). The Federal Circuit has indicated that time away from an individual's home is a more important metric than distance. *Id.*

Walmart's presentation on this factor is seriously deficient. It only states, without citation or factual support, "[t]he respective travel time for witnesses to travel to Waco and Denver favors transfer. The witnesses with knowledge of the accused PopSockets/Otter products are in Colorado, and thus the District of Colorado would require less travel time for them." ECF No. 20 at 12. Not only do these assertions lack support and are entirely attorney argument, but they also only apply to the now-severed claims, rending them wholly irrelevant.

12

Flygrip argues that the inventor of the patent-in-suit, Michael Karmatz, has already indicated that the WDTX is a more convenient forum for him. ECF No. 21 at 14; ECF No. 1-1. While Flygrip notes that there are other witnesses, specifically the employees of Quest and Merkury in New York, there is no indication provided by Flygrip as to the names of those witnesses, their job responsibility, or what relevant or material information they can provide. ECF No. 21 at 13. As such, the Court cannot give them weight in the transfer analysis.

Because of the parties' poor presentation on this factor, there is only one likely material, relevant witness, Mr. Karmatz. He lives in New York. The flight time from New York City to Denver takes approximately 4 hours and 20 minutes, while the flight time from New York City to Waco takes approximately 5 hours and 45 minutes, including the layover or drive from Dallas or Austin. ECF No. 20 at 12. Although the total travel time will be roughly 90 minutes more to the WDTX than to the DCO, according to the Federal Circuit, if witnesses must travel a long distance, their inconvenience will be roughly similar between these two destinations. *In re Genetech*, 566 F.3d at 1344 (stating that the circuit stated "the '100-mile' rule should not be rigidly applied" and that "witnesses from Europe [would] be required to travel a significant distance no matter where they testify" when comparing travel to the NDCA and Eastern District of Texas). *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). Therefore, the Court finds this factor to be neutral.

### iv. *All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive*

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb*

*Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "[W]here there is a co-pending litigation . . . involving the same patent-in-suit, . . . pertaining to the same underlying technology and accusing similar services, . . . the [Federal Circuit] cannot say the trial court clearly abuse[s] its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d at 1346 n.3.

There are two co-pending cases in this Court. Flygrip has filed two other cases against Five Below, Inc. ("Five Below") and Amazon.com, Inc. ("Amazon") asserting the same patent as in this one. *Flygrip, Inc. v. Amazon.com, Inc.*, No. 6:21-cv-01081-ADA (W.D. Tex. Oct. 18, 2021); *Flygrip, Inc. v. Walmart Inc.*, No. 6:21-cv-01080-ADA (W.D. Tex. Oct. 18, 2021).

Walmart asserts that there are no practical problems associated with a transfer, and there is no judicial economy to be gained because the case is in its early stages. ECF No. 20 at 13–14. It adds that transfer to the DCO would not multiply the number of courts addressing the same issues because of the DJ actions in the DCO. *Id.* Walmart also asserts that while there are the two suits currently pending in this District against other retailers of the four accused products, those suits do not weigh against transfer because they do not involve the exact same set of accused products as this one. *Id.* at 13.

Flygrip responds that the presence of the two associated co-pending cases in this Court raises significant practical problems. ECF No. 21 at 16. This "Court must also consider the presence of co-pending motions to transfer." *Parus Holdings Inc. v. LG Elecs. Inc.*, No. 6:19-cv-ADA, 2020 WL 4905809, at *7 (W.D. Tex. Aug. 20, 2020). Amazon filed a motion to transfer venue in its case, so this Court does not consider the co-pendency of the Amazon case in this transfer analysis. *Amazon.com, Inc.*, No. 6:21-cv-01081-ADA, Dkt. No. 30 (W.D. Tex. Oct. 18, 2021); *Parus Holdings Inc.*, No. 6:190-cv-ADA, 2020 WL 4905809, at *7. There has been no

motion to transfer filed in the Five Below case, and this Court will consider that case with the same patent and similar products as highly relevant. Although it is true that this factor alone is not dispositive, this Court has previously held that when there are parallel actions involving the same patents, this factor weighs heavily against transfer. *See NCS Multistage v. Nine Energy Serv.*, C.A. No. 6:20- 00277-ADA, 2021 U.S. Dist. LEXIS 60219, at *8 (W.D. Tex. Mar. 30, 2021). Transfer of this case to Colorado, while another case involving the same patent proceeds here, would create significant practical difficulties. Not only would two courts be ruling on the same patent asserted by the same plaintiff, thus wasting judicial resources, but there would also be the risk of inconsistent rulings on the Patent-in-Suit. There is judicial economy to be gained by trying both cases in the same court.

For those reasons, the Court finds that this factor weighs against transfer.

**B. The Public Interest Factors**

     **i.**      ***Administrative Difficulties Flowing from Court Congestion***

This factor concerns whether there is an appreciable difference in docket congestion between the two forums. *See In re Juniper Networks, Inc.*, 14 F.4th at 1322 (U.S. Fed. Cir. 2021). This factor considers the "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d at 1347. Additionally, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Id.*

Walmart argues that this factor is neutral because the average time-to-trial and cases per judgeship between the CDO and the WDTX are roughly the same. ECF No. 20 at 14. Civil median time-to-trial is 25.1 months in the WDTX and 27.3 months in the DCO, with the number of civil cases per district judge being 2015 in the WDTX and 247 in the DCO. *Id.* It also notes that "'a

court's general ability to set a fast-paced schedule is not particularly relevant to' the court congestion factor" and that this factor should be entitled to lesser weight because the Federal Circuit has indicated that it is a speculative factor. *Id.* at 14 (quoting *In re Apple, Inc.*, 979 F.3d 1332, 1344 (Fed. Cir. 2020)). In response, Flygrip also argues that transfer may cause significant delays in the litigation timeline already established by this Court. ECF No. 21 at 18.

Rapid disposition of this case is important given the Federal Circuit's longstanding sentiment that "[r]ecognition must be given to the strong public policy favoring expeditious resolution of litigation." *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1080 (Fed. Cir. 1989). The Federal Circuit has even acknowledged Congress's interest in the "quick" resolution of patent disputes. *See, e.g.*, *Ethicon Endo-Surgery, Inc. v. Covidien LP*, 826 F.3d 1366, 1367 (Fed. Cir. 2016). While Walmart argues that the Federal Circuit has labeled court congestion is a speculative factor, the Federal Circuit has only instructed that this factor should not by itself be dispositive in keeping a case in the transferor forum; it has not held that this factor is irrelevant. ECF No. 20 at 14; *see also Genentech*, 566 F.3d at 1347 (merely noting that when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors."). Those concerns are not present in this case, where other factors favoring transfer are sufficient to outweigh the degree to which this factor disfavors transfer. Still, a difference of two months in time-to-trial is marginal.

For those reasons, the Court finds this factor is neutral.

## ii. *Local Interest in Having Localized Interest Decided at Home*

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 315. "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No.

3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit.*'" *In re Apple*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original). But courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence. *Id.* To determine which district has the stronger local interest, the Court looks to where the events forming the basis for infringement occurred. *See id.*

Walmart argues that the presence of the Colorado manufacturers of the Accused Products, as well as their employees and development work, gives the DCO a stronger local interest. ECF No. 20 at 15. In its Response, Flygrip asserts that "Walmart's dominant presence in this District strongly weights against transfer." ECF No. 21 at 19. It also argues that since Flygrip is a Texas corporation, "the residents of Texas have a legitimate local interest in the enforcement of patents owned by a resident business." *Id.*

First, as this Court is ordering the severance of Flygrip's claims involving the Colorado manufacturers, this Court will not weigh the Colorado manufacturers in this analysis.

Second, the Federal Circuit has held that a generalized presence of office space is insufficient to give a district a local interest. *In re Apple Inc.*, 979 F.3d at 1345; *see also In re Apple Inc.*, No. 2022-128, 2022 WL 1196768, at *3 (Fed. Cir. Apr. 22, 2022) (holding that this District erred in deciding that "Apple's 'thousands of employees in Austin' and advertising and sale of the accused products in WDTX" were material to the local interest analysis in that case) Furthermore, "the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). As it is

uncontested that the accused products are sold by Walmart nationwide, this Court cannot consider the sales of the accused products in the WDTX or DCO.

Finally, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks, Inc.*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)). In this case, Flygrip re-incorporated in Texas after the filing of the original Motion to Transfer. ECF No. 21-3. Therefore, this Court cannot give weight to Flygrip's status as a Texas corporation in this analysis.

In consideration of the severance, neither the DCO nor the WDTX have a remaining local interest in this case. The Court has already addressed the issues regarding Flygrip's claims of Texas incorporation and Walmart's presence and sale of products in Texas. Given the circumstances, none of those claims are sufficient to establish a local interest in the WDTX or the DCO. Additionally, Flygrip has no presence in Texas other than Texas being its current state of incorporation and as such, has no other grounds on which to establish a local interest in this District. ECF No. 20 at 2.

Furthermore, as there is no indication in the record that Quest or Merkury have committed any infringing acts within the jurisdiction of the WDTX or the DCO, the Court presumes that their design and development of the Accused Products has occurred outside of those jurisdictions. Therefore, their involvement in this case does not establish a local interest in either venue.

For those reasons, the Court finds this factor neutral.

### iii.   *Familiarity of the Forum with the Law That Will Govern the Case*

Both parties agree that this factor is neutral.

iv.    ***Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law***

Both parties agree that this factor is neutral.

## V. CONCLUSION

The Court **GRANTS-IN-PART** Walmart's Motion to Stay. It is **ORDERED** that only the claims involving the Popsockets and Otterbox Products are **STAYED** pending the resolution of the manufacturer cases under the customer-suit exception. The Court will proceed with the claims involving the Quest and Merkury products.

The Court **DENIES** Walmart's Motion to Transfer to the District of Colorado. The Court's conclusion for each § 1404(a) factor is summarized in the following table:

| Factor | The Court's Finding |
|---|---|
| Relative ease of access to sources of proof | Slightly favors transfer |
| Availability of compulsory process to secure the attendance of witnesses | Neutral |
| Cost of attendance for willing witnesses | Neutral |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Disfavors transfer |
| Administrative difficulties flowing from court congestion | Neutral |
| Local interest | Neutral |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

Walmart has not met its burden to show that the DCO would be clearly more convenient. No factor favors transfer. The relative ease of accessing sales documents in Bentonville and the

practical problem of the co-pending case against Five Below suggest that this case should remain in the WDTX. Without any relevant witnesses or documents in the transferee venue, this Court cannot say that this case should be transferred.

It is there **ORDERED** that Defendant Walmart's Opposed Motion to Stay or, in the Alternative, to Transfer Venue is **GRANTED-IN-PART AND DENIED-IN-PART.**

SIGNED this 29th day of June, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE